William C. Rand, Esq. (WR-7685)
LAW OFFICE OF WILLIAM COUDERT RAND
501 Fifth Ave., 15th Floor
New York, New York 10017
(Phone) (212) 286-1425; (Fax)(646) 688-3078

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
GALINA BARBARINO, ADAMA TRAORE,
AWA SOW, MABINTY CONTE, SARAH SAKO,            ECF
                                                1:20-cv-10599
                 Plaintiffs,

                                                **COMPLAINT AND**
   -against-                                    **JURY DEMAND**

ATTENTIVE HOME CARE AGENCY INC.
d/b/a ALWAYS HOME CARE, ALWAYS HOME CARE
AGENCY INC., YELENA PUSTILNIK and
JOHN DOES #1-10,

                 Defendants.
------------------------------------------------------------------------X

Plaintiffs GALINA BARBARINO, ADAMA TRAORE, AWA SOW, MABINTY CONTE, SARAH SAKO (collectively "Plaintiff" or "Plaintiffs"), by and through their attorney, complain and allege for their complaint against ATTENTIVE HOME CARE AGENCY INC. d/b/a ALWAYS HOME CARE, ALWAYS HOME CARE AGENCY INC., YELENA PUSTILNIK and JOHN DOES #1-10 (together "Defendant" or "Defendants") as follows:

## NATURE OF THE ACTION

1. Each Plaintiff was a home health aide who worked for Defendants for more than 40 hours per week ("overtime hours") and, along with numerous other similar home health aides, was paid straight time for her overtime hours and was not paid time and one half for her overtime hours and was illegally not paid for many 24 hour shifts or illegally paid for only 13 hours of her 24 hour shifts and also was not paid spread of hours wages and minimum wages under the N.Y. Health Care Worker Wage Parity Act.

2. Each Plaintiff previously opted out of the settlement of the federal case entitled *Norbivi Plaintiffs v. Attentive Home Care Agency, Inc. et al.,* 16 Civ. 01005 (E.D.N.Y.), filed on February 29, 2016 ("Norbivi Case").

3. The Norbivi Case was a class action, and its filing tolled the statute of limitations related to Plaintiffs' claims.

4. Each Plaintiff alleges that she is: (i) entitled to unpaid wages from Defendants for overtime work for which she did not receive overtime premium pay, as required by law, and (ii) entitled to liquidated damages pursuant to the FLSA, 29 U.S.C. §§201 *et seq.*

3. Each Plaintiff further complains that she is entitled to back wages from Defendant for (a) hours worked for which she did not receive wages including wages as required under the Wage Parity Act, (b) overtime work performed for which she received straight pay and did not receive time and one half the minimum wage or time and one half her actual wages, and (c) spread of hours work performed for which she did not receive an extra hour of pay, as required by the New York Labor Law §§ 650 *et seq*. and the supporting New York State Department of Labor regulations,

4. Each Plaintiff is also entitled to damages under the New York Wage Theft Prevention Act because Defendants did not provide proper notices to each Plaintiff.

## **JURISDICTION AND VENUE**

5. This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1337, 1343, and supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.  In addition, the Court has jurisdiction over Plaintiff's claims under the FLSA pursuant to 29 U.S.C. § 216(b).

6. Venue is proper in this district pursuant to 28 U.S.C. §1391.

7. This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

## THE PARTIES

6. Plaintiff GALINA BARBARINO was, at all relevant times, an adult individual, residing in Kings County in New York State.

7. Plaintiffs ADAMA TRAORE, AWA SOW, MABINTY CONTE and SARAH SAKO were each, at all relevant times, an adult individual, residing in Bronx County in New York State.

8. Upon information and belief, Defendant ATTENTIVE HOME CARE AGENCY INC. d/b/a ALWAYS HOME CARE and ALWAYS HOME CARE AGENCY INC. (individually and together the "Corporate Defendant") each is a New York corporation, with its principal place of business at 2774 Coney Island Ave., N.Y. 11235.

9. Upon information and belief, Defendant YELENA PUSTILNIK is an officer, director and/or managing agent of the Corporate Defendant, whose address is unknown at this time and who participated in the day-to-day operations of the Corporate Defendant and acted intentionally and maliciously and is an "employer" pursuant to the FLSA, 29 U.S.C. §203(d) and regulations promulgated thereunder, 29 C.F.R. §791.2, as well as the New York Labor Law Sec. 2 and the regulations thereunder and is jointly and severally liable with the Corporate Defendant.

10. Upon information and belief, John Does #1-10 represent the officers, directors and/or managing agents of the Corporate Defendant, whose identities are unknown at this time and who participated in the day-to-day operations of the Corporate Defendant and acted

intentionally and maliciously and are "employers" pursuant to the FLSA, 29 U.S.C. §203(d) and regulations promulgated thereunder, 29 C.F.R. §791.2, as well as the New York Labor Law Sec. 2 and the regulations thereunder and are jointly and severally liable with the Corporate Defendant.

11. Upon information and belief, YELENA PUSTILNIK is the President and Chief Executive Officer of each Corporate Defendant and has held these positions during the last 6 years ("Pustilnik time period").

12. Upon information and belief, during the Pustilnik time period, YELENA PUSTILNIK had authority over the Corporate Defendant's management, supervision, and oversight of the Corporate Defendant's affairs in general and exercised operational control over the Corporate Defendants' home health aide employees and other employees and her decisions directly affected the nature and condition of the home health care employees' employment.

13. Upon information and belief, during the Pustilnik time period, YELENA PUSTILNIK (1) had the power to hire and fire the home health aide employees of the Corporate Defendant, (2) supervised and controlled the home health aide employees' schedules and conditions of employment, (3) determined the rate and method of payment of the home health aide employees, and (4) maintained employment records related to the home health aide employees.

## STATEMENT OF FACTS

14. Plaintiff GALINA BARBARINO was a home health aide/maid employed by Attentive from about March 15, 2015 until about November 15, 2019.

15. Plaintiff ADAMA TRAORE was a home health aide/maid employed by

Attentive from about November 1, 2013 until on or about July 31, 2015

16. Plaintiff AWA SOW was a home health aide/maid employed by Attentive from about May 1, 2017 until on or about December 15, 2017.

17. Plaintiff MABINTY CONTE was a home health aide/maid employed by Attentive from about November 1, 2013 until on or about July 31, 2016.

18. Plaintiff SARAH SAKO was a home health aide/maid employed by Attentive from about July 31, 2015 until on or about January 15, 2016.

19. Defendants are a licensed home health care agency that sent Plaintiffs to work as a home health aide/maid for numerous customers located in New York City.

20. During the time period, Plaintiffs never worked for Defendants outside of New York City.

21. During the time period, Plaintiffs maintained their own residence, and did not "live in" the homes of Defendants' clients or in the home of their employer, as their primary residence.

22. While employed by Defendants, Plaintiffs generally worked more than 40 hours per week and were not paid time and one half for their hours worked over 40 in a work week.

23. Plaintiffs often worked 24-hour shifts for Defendants during their employment.

24. Defendants had no policies in place to determine if a health aide received three one hour meal breaks during a 24-hour live in shift and did not have any policies to determine if any health aide received 5 hours of uninterrupted sleep and 8 hours of sleep during a 24-hour live in shift.

25. Even when Defendants had knowledge that a health aide was unable to get any sleep during the night or take any meal breaks, Defendants still illegally deducted 8 hours of sleep time and three hours of meal break time from the health aide's hours worked.

26. Defendants had no policies in place to identify which health aides were not getting sleep or breaks during 24-hour live in shifts and to pay them for their lack of sleep or meal breaks.

27. Defendants had no policy to identify which Plaintiffs were not provided a bed to sleep on during 24-hour live in shifts.

28. Even when Defendants knew a Plaintiff was not given a bed to sleep on during 24-hour live in shifts, Defendants did not pay the Plaintiff for 8 hours of the Plaintiff's 24 hour shift.

29. When Plaintiffs worked 24-hour shifts, each Plaintiff was required to stay overnight at the residences of Defendants' clients, and needed to be ready and available to provide assistance to Defendants' clients as needed.

30. When Plaintiffs worked 24-hour shifts, they were not permitted to leave the client unattended.

31. Plaintiffs were only paid for approximately 13 hours of their 24-hours shifts.

32. Plaintiffs were not paid any hourly rate for the other 11 hours worked.

33. Plaintiffs were generally not permitted to leave the client's residence during their shifts.

34. Plaintiffs generally did not get 8 hours of sleep and 5 hours of sleep without any interruption during their 24-hour live in shifts.

35.     Plaintiffs did not get a one-hour break for each of three meals per day.

36.     Plaintiffs were often forced to combine their meal times with the meal times of the Defendants' clients because they needed feeding assistance or constant supervision.

37.     Plaintiffs did not always receive the "spread of hours" premium of one additional hour at the minimum wage rate for the days in which they worked a spread of more than ten hours.

38.     Plaintiffs spent at least 30% of her time directly performing household work.

39.     Plaintiffs also did not receive minimum wages, including minimum wages under the Wage Parity Act, for all their hours worked and were not paid time and one half the minimum wage rate for their overtime hours and were not paid full time and one half their regular rate for their overtime hours.

40.     Plaintiffs was not given or offered health insurance by Defendant.

41.     Medicaid paid Defendants for some or all of Plaintiffs' services.

42.     At all relevant times, Defendants have maintained a practice and policy of paying similar health aides for only 13 hours of their 24-hour shifts in violation of New York Labor Law.

43.     Defendants had no policies in place to determine if a health aide received three one hour meal breaks during a 24-hour live in shift and did not have any policies to determine if any health aide received 5 hours of uninterrupted sleep and 8 hours of sleep during a 24-hour live in shift.

44. Plaintiffs complained to their coordinators that they were unable to get any sleep during the night or any meal breaks, but Defendants still deducted 8 hours of sleep time and three hours of meal breaks from their hours worked.

45. Defendants had no policies in place to identify which health aides were not getting sleep or breaks during 24-hour live in shifts and to pay them for their lack of sleep or meal breaks.

46. At all relevant times, Defendants have maintained a practice and policy of assigning Plaintiffs to work more than 40 hours per week without paying them one and one half times the basic minimum hourly rate for all hours worked in excess of forty per week, in violation of New York State Labor Law and the Wage Parity Act.

47. Defendants' actions as described herein were intentional and not made in good faith.

48. Plaintiffs were not able to get 5 hours of uninterrupted sleep or 8 hours of sleep during 24-hour live in shifts because they generally had to get up at least every four hours to provide services to the client, which included among other services, taking the client to the bathroom, getting the client a glass of water or a snack, calming the client when the client became stressed, cleaning the client's bed when the client urinated or defecated in the bed and/or changing the client's pajamas.

49. At times, Plaintiffs had to turn the client every two hours at the client's request or as directed by the Plan of Care.

50. During the time period, Plaintiffs were not paid full regular wages for all their hours worked and were not paid overtime wages for all of their hours worked over forty in a

workweek ("overtime"), and were not paid an extra hour of pay for their hours worked over a spread of 10 hours per day.

51. During the time period, Plaintiffs often worked for 24 hours staying overnight at the client's house, and on these days were only paid for 13 hours, despite the fact that their sleep was regularly interrupted generally at least 3-4 times by the client throughout the night which prevented them from getting 5 hours of uninterrupted sleep and/or 8 hours of sleep and despite the fact that they were not given any time off for meal breaks.

52. Plaintiffs generally clocked in and out using the client's land line phone.

53. When Plaintiffs clocked out, Plaintiffs generally entered codes showing the types of work that they had performed.

54. At times Plaintiffs filed handwritten time sheets.

55. There were no codes to report not getting sleep or breaks during 24-hour shifts.

56. During the time period, Plaintiffs did not receive a meal break because they were on call or working during their breaks and regularly interrupted by the client while eating.

57. During the time period, Plaintiffs were not paid for all their hours worked and were not paid for their hours worked over 40 hours a week ("overtime hours") at time and one half their regular wages and at times were not paid for all their hours worked at the minimum wage rate.

58. During the time period, Plaintiffs were not specifically notified by Defendants of the regular pay day designated by Defendants, Defendants' name, address and principal place of business and telephone number and their specific rate of pay as required by the New York Wage Theft Prevention Act.

59. Plaintiffs have not been given any specific notice of this information to sign and have not signed any such notice.

60. Plaintiffs also were not given any paystubs showing their correct hours worked and pay rate.

61. Upon information and belief, Defendants did not post in a conspicuous place a notice that Plaintiffs were entitled to minimum wages or overtime and accordingly the statute of limitations should be tolled.

## CLAIM I

## FAIR LABOR STANDARDS ACT

62. Plaintiffs repeat and reallege each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

63. At all relevant times, Defendants have been and continue to be, employers engaged in interstate commerce and/or the production of goods for commerce, within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a).

64. At all relevant times, Defendants employed, and/or continue to employ, each Plaintiff within the meaning of the FLSA.

65. Upon information and belief, at all relevant times, Defendants have had gross revenues in excess of $500,000.

66. Each Plaintiff consents in writing to be a party to this action, pursuant to 29 U.S.C. §216(b). The named Plaintiffs' written consents are attached hereto and incorporated by reference.

67. At all relevant times, the Defendants had a policy and practice of refusing to pay

its Plaintiffs minimum wages and/or overtime wages equal to time and one half their employees' regular wages for hours worked over forty in a work week.

68. As a result of the Defendants' willful failure to compensate Plaintiffs overtime wages and/or minimum wages for all of their hours worked the Defendants have violated and continue to violate, the FLSA, 29 U.S.C. §§ 201 *et seq.*, including 29 U.S.C. §§ 207(a)(1) and 215(a).

69. As a result of the Defendants' failure to record, report, credit and/or compensate Plaintiffs, the Defendants have failed to make, keep and preserve records with respect to each of its employees sufficient to determine the wages, hours and other conditions and practices of employment in violation of the FLSA, 29 U.S.C. §§ 201, *et seq.*, including 29 U.S.C. §§ 211(c) and 215(a).

70. The foregoing conduct, as alleged, constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a).

71. Due to the Defendants' FLSA violations, Plaintiffs are entitled to recover from the Defendants, their unpaid minimum and overtime wages, and an equal additional amount as liquidated damages, additional liquidated damages for unreasonably delayed payment of wages, interest, reasonable attorneys' fees, and costs and disbursements of this action, pursuant to 29 U.S.C. § 216(b).

## CLAIM II
## NEW YORK LABOR LAW

72. Plaintiffs repeat and reallege each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

73. At all relevant times, Plaintiffs were employed by the Defendants within the

meaning of the New York Labor Law, §§ 2 and 651.

74. Defendants willfully violated Plaintiff's rights by failing to pay them wages in violation of the New York Labor Law and its regulations.

75. The Defendants' New York Labor Law violations have caused Plaintiffs, irreparable harm for which there is no adequate remedy at law.

76. Due to the Defendants' New York Labor Law violations, Plaintiffs are entitled to recover from Defendants their unpaid wages, unpaid minimum wages, unpaid overtime wages, unpaid spread of hours wages, reasonable attorneys' fees, and/or costs and disbursements of the action, pursuant to New York Labor Law §663(1) et seq.

77. Defendants willfully violated Plaintiff's rights by failing to provide his proper notices and wage statements in violation of the New York Wage Theft Prevention Act, N.Y. Lab. Law § 198(1-a) (enacted on April 9, 2011).

78. As a result of Defendants' violation of the New York Wage Theft Prevention Act, Plaintiff is entitled to damages of at least $150 per week during which the violations occurred.

## CLAIM III
(Breach of Contract –Third Party Beneficiaries of Wage Parity Act Contract
With New York State)

79. Plaintiff realleges and incorporates by reference all preceding paragraphs of this Complaint.

80. Upon information and belief, at all times relevant to this complaint, Defendants were required to certify and did certify that they paid Plaintiffs wages as required by NY Health Care Worker Wage Parity Act.

81. The agreement to pay Plaintiffs wages as required by the NY Health Care

Worker Wage Parity Act was made for the benefit of the Plaintiff.

82. Defendants breached their obligation to pay Plaintiffs all wages they were due as required by the NY Health Care Worker Wage Parity Act and as result Plaintiffs were injured.

83. Plaintiffs, as third party beneficiaries of Defendants' contract with government agencies to pay wages as required by the NY Health Care Worker Wage Parity Act, and as persons protected by the NY Health Care Worker Wage Parity Act are entitled to relief for the breach of this contractual obligation and the violation of this Act, plus interest.

### CLAIM IV
(Unjust Enrichment, Defendants' Failure to Pay All Wages Due Including Wages for Minimum Wages under the NY Health Care Worker Wage Parity Act, and Spread of Hours)

84. Plaintiffs reallege and incorporate by reference all preceding paragraphs of this Complaint.

85. Under the common law doctrine of "unjust enrichment" insofar as Defendants, by their policies and actions, benefited from, and increased their profits and personal compensation by failing to pay Plaintiffs: (1) all wages due for work performed; (2) an extra hour at the minimum wage for working a "spread of hours" in excess of 10 hours or a shift longer than 10 hours; and (3) all minimum wages due under NY Pub. Health§ 3614-c, the New York Health Care Worker Wage Parity Act.

86. Defendant accepted and received the benefits of the work performed by Plaintiffs at the expense of Plaintiffs. It is inequitable and unjust for Defendants to reap the benefits of Plaintiffs' labor, without paying all wages due, which includes but is not limited to all minimum wages due under NY Pub. Health§ 3614-c, the New York Health Care Worker Wage Parity Act, for hours caring for the clients of Defendants.

87. Plaintiffs are entitled to relief for this unjust enrichment in an amount equal to the benefits unjustly retained by Defendant, plus interest on these amounts.

## CLAIM V
(Violation of Wage Parity Act Minimum Wage Requirement)

88. Plaintiffs reallege and incorporate by reference all preceding paragraphs of this Complaint.

89. Upon information and belief, at all times relevant to this complaint, Defendants were required to certify and did certify that they paid Plaintiffs wages as required by NY Health Care Worker Wage Parity Act.

90. Under the NY Health Care Worker Wage Parity Act Defendants were required to pay Plaintiffs minimum wages under the NY Health Care Worker Wage Parity Act.

91. Defendants breached their obligations to pay minimum wages as required by the NY Health Care Worker Wage Parity Act, and as result Plaintiffs were injured.

92. Plaintiffs are entitled to recover their unpaid minimum wages, plus interest, as relief for the violation of the NY Health Care Worker Wage Parity Act.

## CLAIM VI
(Breach of Contract-Wages)

93. Plaintiffs reallege and incorporate by reference all preceding paragraphs of this Complaint.

94. Plaintiffs entered into contracts with the Defendant under which Plaintiffs were to provide home health aide and maid services and Defendants were required to pay (a) wages as required by law, (b) wages equal to time and one half the regular wage rate for hours worked during Federal holidays and also (c) a one week paid vacation annually.

95. Plaintiffs fulfilled their obligations under the contracts, but Defendant failed to pay the wages as required by the contracts.

96. As a result of Defendants' breach, Plaintiffs are entitled to recover damages, plus interest.

**CLAIM VII**
(Living Wage Act claim)

97. Plaintiffs reallege and incorporate by reference all the allegations set forth above.

98. NYC Admin. Code § 6-109 provides that an employer whose employees perform work pursuant to city service contracts or subcontracts (the "City Service Contract(s)") must pay "no less than the living wage and must provide its employees health benefits (supplemental benefits) or must supplement their hourly wage rate by an amount no less than the health benefits supplement rate."

99. NYC Admin. Code § 6-109 further provides that "[the abovementioned] requirement applies for each hour that the employee works performing the city service contract or subcontract."

100. The "living wage" and "health benefits" or "health benefits supplement" are the wages and supplements set forth under Homecare Services in § 6-109 of the NYC Admin. Code. Upon information and belief, the schedule of living wages and supplements to be paid to all workers furnishing labor pursuant to the City Service Contract(s) was annexed to and formed a part of the City Service Contract(s), in accordance with NYC Admin. Code § 6-109.

101. Plaintiffs furnished labor to Defendant in furtherance of its performance of the City Service Contract(s).

102. Upon information and belief, Defendant willfully paid Plaintiffs less than the rates of wages and benefits to which Plaintiffs were entitled.

103. Defendant's actions as described herein were intentional and not made in good faith.

104. Upon information and belief, the City Service Contract(s) entered into by Defendant contained provisions requiring the payment of living wages and health benefits or health benefit supplements to Plaintiffs.

105. Those living wages and health benefits or health benefit supplements were made a part of the City Service Contract(s) for the benefit of Plaintiffs.

106. Defendant breached the City Service Contract(s) by willfully failing to pay Plaintiffs the living wages and health benefits or health benefit supplements for all labor performed.

107. Further, NYC Admin. Code § 6-109 specifically requires, as a matter of law, that language mandating compliance with NYC Admin. Code § 6-109 be included with and form a part 13 of the City Service Contract(s).

108. Further, upon information and belief, each and every City Service Contract(s) contained a provision, in identical or similar language, stating that "each and every provision of law required to be inserted in this Agreement shall be and is inserted herein.  Furthermore, it is hereby stipulated that every such provision is to be deemed to be inserted herein."

109. By reason of its breach of the City Service Contract(s), Defendant is liable to Plaintiffs for an amount to be determined at trial, plus interest.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request that this Court grant the following relief:

a. Judgment in an amount to be determined at trial, plus interest;

b. A declaratory judgment that the practices complained of herein are unlawful under the FLSA and the New York Labor Law;

c. An order tolling the statute of limitations;

d. An injunction against the Defendants and their officers, agents, successors, employees, representatives and any and all persons acting in concert with it, as provided by law, from engaging in each of the unlawful practices, policies and patterns set forth herein;

e. An award of unpaid wages, spread of hours wages, overtime wages and minimum wages due under the FLSA, the New York Labor Law, the New York common law, and/or the NY Health Care Worker Wage Parity Act;

f. An award of liquidated and/or punitive damages, as a result of the Defendants' willful failure to pay wages, minimum wages, and/or overtime wages pursuant to 29 U.S.C. § 216 and the New York Labor Law and the New York common law and the NY Health Care Worker Wage Parity Act;

g. An award of prejudgment and postjudgment interest;

h. An award of costs and expenses of this action together with reasonable attorney's and expert fees;

i. Such other and further relief as this Court deems just and proper.

## DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs demand a trial by jury on all questions of fact raised by the complaint.

Dated: New York, New York
December 15, 2020

                                                      LAW OFFICE OF WILLIAM COUDERT RAND

                                                       William Coudert Rand, Esq.
                                                       *Attorney for Plaintiffs*
                                                       501 Fifth Avenue 15th Floor
                                                       New York, New York 10017
                                                       Tel: (212) 286-1425
                                                       Fax: (646) 688-3078
                                                       Email: wcrand@wcrand.com